IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM SHAMAR GREEN | : | CIVIL ACTION |
| | : | |
| v. | : | No. 23-3037 |
| | : | |
| LIEUTENANT MERGEN, et al. | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez**                                                                               **January 23, 2025**

Pro se plaintiff William Shamar Green brings this civil rights action pursuant to 42 U.S.C. § 1983 against employees of the State Correctional Institution (SCI) at Phoenix, where Green was previously incarcerated.[1] Green alleges Defendants used excessive force against him and were deliberately indifferent to his safety while he was incarcerated at SCI Phoenix in violation of the Fourth, Fourteenth, and Eighth Amendments. Six Commonwealth Defendants have moved for summary judgment on all claims, and Green has also filed his own motion for summary judgment.[1] Upon review of the record, the Court concludes the Fourth and Fourteenth Amendments do not apply to Green's allegations. Furthermore, Green has failed to demonstrate a genuine dispute of material fact as to his Eighth Amendment claims, and Defendants are entitled to judgment as a matter of law on those claims. The Court will therefore grant summary judgment for Defendants on all claims, and deny Green's motion for summary judgment.

**BACKGROUND**[2]

---

[1] The instant motions pertain to the following six defendants (collectively known as "Commonwealth Defendants"): Lieutenant Lauren Mergen, Sergeant Mark McLean, Corrections Officer Maurice Nesmith, Corrections Officer Anais Saldana, Corrections Officer Kevin Volk, and Corrections Officer Arthur Wolman. The only other remaining defendant in this case, Defendant "Nurse Ms. Sherry," has not yet been identified nor served. *See* ECF No. 22.

[2] The Court discusses only facts relevant to the instant motions.

1

On May 24, 2022, Plaintiff William Shamar Green was transferred from SCI Huntington to SCI Phoenix. ECF No. 54-1 at 57.[3] Following his arrival, Green was escorted to his cell, A-D-2007, which he was meant to share with fellow inmate Kareem Carter. *Id.*

During his deposition, Green testified that once he reached the cell, Carter told prison officials that he, Carter, would not take a cellmate. *Id.* at 15. Green also described Carter as "hostile" and "acting up," *id.* at 15-16, 21, and noted that Carter was not handcuffed, allegedly in violation of Department of Corrections protocol. *Id.* at 17-18.[4] Carter—who provided a declaration as part of Green's motion for summary judgment—attests to having told Defendants, "I'm not taking a cellie." ECF No. 55 at 2.[5] Carter also notes that Green told Defendants, "I'm not going in there with [Carter], he's too hostile, and he's not cuffed." *Id.*[6]

In any event, prison officials told Carter to go to the back of the cell, which Defendants claim he did, at least initially. *Id.* at 62, 74. Green testified that Carter stood in the doorway of the cell to block Green from entering. *Id.* at 19. An officer then opened the cell door, at which point

---

[3] Page number references are to the CM/ECF pagination in the header of each document filed via the Court's electronic case filing system, which may vary from pagination elsewhere in the document.

[4] Green testified that based on his prior experiences receiving new cellmates, he believed Department of Corrections protocol required use of handcuffs in this situation. *Id.* at 23-24.

[5] Carter's declaration was not made under penalty of perjury and therefore cannot be considered by the Court. To be considered at summary judgment, declarations and other similar statements must be made under penalty of perjury. *United States ex rel. Doe v. Heart Sol., PC*, 923 F.3d 308, 315 (3d Cir. 2019). These requirements apply to all parties, including those proceeding pro se. *See Pressley v. Miller*, No. 21-2826, 2022 WL 17414866, at *2, n.3 (3d Cir. Dec. 5, 2022). Even if the declaration was cured of its procedural defect, however, the facts provided by Carter would not alter the Court's analysis and Defendants would still be entitled to summary judgment.

[6] Defendants dispute Green and Carter's account, citing staff interviews conducted a bit more than a month after the incident, which report that while Carter refused to be handcuffed, he did not refuse a cellmate at first. ECF No. 54-1 at 62, 66, 70, 72, 74. For example, Defendant Corrections Officer McLean reported there was "no need" to write up Carter and place Green in a different cell because Carter did not refuse a cellmate originally and that if he had, McLean would not have placed Green in the cell with him. *Id.* at 74.

2

Carter tried to come out. *Id.* at 21-22. In their staff interviews, Defendants describe Carter as "charging" and "rushing" the door. *Id.* at 62, 66, 70, 74. Green testified that Defendants then pushed Green into the cell, trying to "force [him] through [Carter]." *Id.* at 21. He testified that somewhere between two and five of the six Commonwealth Defendants pushed him, although he has not been able to identify who specifically was responsible. *Id.* at 25-26, 51. In his declaration, Carter describes Defendants as trying "to use Green as a human battering ram," and states that they tried to "throw" Green through Carter. ECF No. 55 at 2. Defendants characterize the incident differently, stating instead that they hurriedly "placed" Green in the cell "to secure him while Inmate Carter was rushing out." ECF No. 54-1 at 62; *see id.* at 66 ("Inmate Green was quickly placed inside the cell in anticipation of Inmate Cater (sic) rushing out."). Whether pushed or placed, Green slipped on his way into the cell and hit his head on a shelf inside, resulting in a "big golf ball on the side of [his] head which led to a concussion later on." *Id.* at 21, 27-29. After hitting his head, Green remained standing, although bent over, and felt a throbbing in his head. *Id.* at 37. In the meantime, Defendants were attempting to stop Carter, who had managed to exit the cell. *Id.* at 33.

A few days later, Green was transferred back to SCI Huntington, where he was treated for his injury and where medical staff confirmed he had suffered a slight concussion. *Id.* at 42, 45. He reports that in the days following his injury, he experienced dizziness and forgetfulness, and was in extreme pain (ranking his pain a 10 out of 10). *Id.* at 42-43. His symptoms lasted somewhere between two weeks and a month. *Id.* at 45.

**STANDARD OF REVIEW**

A court will grant summary judgment if a moving party can establish (1) "there is no genuine dispute as to any material fact" and (2) "the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a); *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012). The moving party bears the initial burden of identifying the parts of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to show—by citing to specific facts in the record—that there is a genuine issue of material fact requiring the case to proceed to trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Merely denying the allegations is insufficient. *Id.* A fact is "material" if it could affect the outcome of the suit—as determined based on the substantive law governing the issue—and a dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248.

In reviewing a motion for summary judgment, a court must draw all inferences in favor of the nonmoving party. *Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 345 (3d Cir. 2022). A court is to consider the parts of the record cited by the parties—such as depositions, documents, and affidavits—and may consider other parts of the record. Fed. R Civ. P. 56(c). Where there are cross-motions for summary judgment, the court must rule on "each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (internal citation omitted).

Where a plaintiff is pro se, a court is to construe the allegations liberally, applying the "relevant legal principle even when the complaint has failed to name it." *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). While this standard affords pro se litigants some flexibility—especially if they are incarcerated—they must still follow the rules that apply to all litigants. *Mala*, 704 F.3d at 244-45; *see Talbert v. Corr. Dental Assocs.*, No. 18-5112, 2020 WL 6530317, at *1 (E.D. Pa. Nov. 5, 2020)

("A *pro se* incarcerated person is not permitted to disregard the Federal Rules of Civil Procedure."). This means that at summary judgment, a pro se litigant is "not relieved of [their] obligation under Rule 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for summary judgment." *Edwards v. Rice-Smith*, 606 F. Supp. 3d 151, 154 (E.D. Pa. 2022) (internal citation omitted); *Watson v. Phila. Hous. Auth.*, 629 F. Supp. 2d 481, 485 (E.D. Pa. 2009) ("The party opposing summary judgment, whether pro se or counseled, must present evidence, through affidavits, depositions, or admissions on file, to show that there is a genuine issue for trial.").

**DISCUSSION**

Commonwealth Defendants move for summary judgment on all claims brought by Green: (1) a Fourth Amendment claim, (2) a Fourteenth Amendment Procedural Due Process claim, (3) a Fourteenth Amendment Substantive Due Process Claim, and (4) Eighth Amendment claims. Because the Fourth and Fourteenth Amendment claims are not viable, summary judgement will be granted to Defendants on those claims. Additionally, Defendants will be granted summary judgment on the Eighth Amendment claims as there is no genuine dispute of material fact on those claims and Defendants are entitled to judgment as a matter of law. For those same reasons, Green's summary judgment motion will be denied.[7] The Court will address each claim in turn.

---

[7] In addition to seeking summary judgment for the substantive reasons discussed in this memorandum, Defendants also raise numerous procedural deficiencies with Green's motion. They note that it does not include a brief nor a statement of undisputed facts, does not specify the claims for which Green seeks summary judgment, and effectively does not cite to any evidence because the only evidence included in the motion is Carter's declaration, which cannot be considered as it was not made under penalty of perjury. ECF No. 57. Because Defendants are entitled to summary judgment on the merits, the Court need not address these procedural deficiencies. In other words, even if Green were given the opportunity to cure these defects, the outcome of the case would be the same.

Defendants move for summary judgment on the Fourth Amendment claim, arguing Green's allegations do not give rise to a Fourth Amendment violation because he has not accused Defendants of conducting an unreasonable search or seizure. Because Green has not established a Fourth Amendment violation, the Court will grant summary judgment for Defendants on the Fourth Amendment claim.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. amend. IV. Its protections against unlawful seizures are temporally limited, extending only until trial. *Halsey v. Pfeiffer*, 750 F.3d 273, 291 (3d Cir. 2014); *Torres v. McLaughlin*, 163 F.3d 169, 174 (3d Cir.1998) ("[W]e refer to the Fourth Amendment as applying to those actions which occur between arrest and pre-trial detention."). While excessive force claims are often brought under the Fourth Amendment—such as where excessive force was used during an arrest—"[a]n excessive force claim brought by a convicted prisoner serving a sentence of incarceration is governed by the Eighth Amendment, which prohibits the infliction of cruel and unusual punishment." *Anton v. Guarini*, Civ. No. 09-2899, 2010 WL 5258219, at *4 (E.D. Pa. Dec. 22, 2010); *see also Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (discussing the differences between Fourth Amendment and Eighth Amendment excessive force claims); *Whitley v. Albers,* 475 U.S. 312, 318–26 (1986) (analyzing excessive force claim brought by a convicted prisoner under the Eighth Amendment).

Here, Defendants' motion for summary judgment on the Fourth Amendment claim succeeds because Green's claims only involve conduct that occurred while he was serving his sentence at SCI Phoenix. *See generally* ECF No. 2. There is no indication that Green brings claims for conduct that occurred between his arrest and pre-trial detention, during which the Fourth Amendment may have applied. During his deposition, Defendants questioned Green about the

basis for his Fourth Amendment claim, asking whether the incident on May 24, 2022 at SCI Phoenix was the basis for his Fourth Amendment claim, to which Green responded, "Yes, yes." ECF No. 54-1 at 13. In his opposition to Defendants' motion, Green quotes the Fourth Amendment and argues he has "demonstrated that Commonwealth Defendants have violated the Fourth Amendment," thus entitling him to summary judgment. ECF No. 65 at 1-2. However, Green cites to no evidence indicating that his Fourth Amendment claim is about anything other than the events that took place on May 24, 2022 at SCI Phoenix. Nor does Green cite to any such evidence in his own motion for summary judgment. Because there is no dispute as to the subject of Green's Fourth Amendment claim, and because the claim fails as a matter of law, summary judgment will be entered for Defendants on the Fourth Amendment claim.

Next, Defendants move for summary judgment on Green's Fourteenth Amendment procedural due process claim, arguing his allegations do not give rise to a procedural due process violation. The Court is also unable to make out any procedural due process violations in Green's allegations. Accordingly, Defendants will be granted summary judgment on the Fourteenth Amendment procedural due process claim.

The Fourteenth Amendment's Due Process Clause protects persons against state deprivations of life, liberty, or property without due process of law. *Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 437 (3d Cir. 2020). Procedural due process is concerned not with the deprivation itself, but whether there was a *lack of process* regarding the deprivation. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis added). To determine whether a party has been deprived of procedural due process, courts apply a two-step analysis, asking: "(1) whether the asserted individual interests are encompassed within the fourteenth amendment's protection of life, liberty, or property; and (2) whether the procedures available provided the plaintiff with due

process of law." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) (internal citation and quotation marks omitted).

As to the first step, a liberty interest may "arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Porter*, 974 F.3d at 437 (citation omitted). For those who are incarcerated, a deprivation of a state-created liberty interest exists if the deprivation "imposes *atypical and significant hardship* on the inmate in relation to the ordinary incidents of prison life." *Id.* at 438 (finding that 33 years in solitary confinement—among other factors—created a due process liberty interest). If such a deprivation exists, "familiar notions of notice and opportunity to be heard guide the Court's consideration of whether adequate process was provided." *Watson v. Wetzel*, Civ. No. 23-3246, 2024 WL 5096209, at *4 (E.D. Pa. Dec. 12, 2024) (citing *Shoats v. Horn*, 213 F.3d 140, 144-45 (3d Cir. 2000)); *see also Kadakia v. Rutgers*, 633 F. App'x 83, 88 (3d Cir. 2015) ("The essence of a procedural due process claim, of course, is notice and an opportunity to be heard.").

Green brings this lawsuit to challenge the alleged excessive force used against him by Defendants and their deliberate indifference to his safety. Even assuming the use of excessive force or deliberate indifference could give rise to a liberty interest, Green nowhere challenges any *lack of process* in the events leading up to or following the events on May 24, 2022. Indeed, during Green's deposition, he clarified that the incident on May 24, 2022 at SCI Phoenix was the basis for his Fourteenth Amendment claim. ECF No. 54-1 at 13. In his opposition, Green does not deviate from this position, only stating that he has demonstrated that Defendants have "violated the procedural due process rights afforded by the Fourteenth Amendment" as "shown on video and by Inmate Carter statement of facts." ECF No. 65 at 2. The video is not in the record, and the statement of facts—which the Court may not consider in any event, *see* n.5, *supra*—also does

reference any procedural violation. Summary judgment also will be granted to Defendants on the procedural due process claim.

Defendants also move for summary judgment on Green's Fourteenth Amendment substantive due process claim, arguing the claim is already wholly encompassed under his Eighth Amendment claim and accordingly, cannot also be brought under the Fourteenth Amendment. The Court agrees.[8]

"Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal citation and quotation marks omitted). This idea—known as the "more-specific provision rule"—means that claims better addressed under a specific amendment may not be brought under substantive due process. *Betts v. New Castle Youth Dev. Ctr.,* 621 F.3d 249, 260 (3d Cir. 2010). In this lawsuit, Green brings excessive force claims under both the Fourteenth Amendment's substantive due process clause and the Eighth Amendment. The Eighth Amendment "serves as the primary source of substantive protection to convicted prisoners in cases . . . where the deliberate use of force is challenged as excessive and unjustified." *Id.* (quoting *Whitley*, 475 U.S. at 327); *see Banks v. Mozingo*, 423 F. App'x 123, 128 (3d Cir. 2011) ("[T]o the extent [plaintiff] alleges due-process violations relating to excessive force [in prison] . . . these claims are properly analyzed under the Eighth Amendment."). Because the Eighth Amendment—and not substantive due process—governs Green's claim for excessive

---

[8] Green does not address the Fourteenth Amendment substantive due process claim in either his opposition to Defendants' motion or his motion for summary judgment.

force, summary judgment will be granted to Defendants as to Green's Fourteenth Amendment substantive due process claim.

Next, the Court turns to Green's Eighth Amendment excessive force claim, in which he alleges Defendants violated his rights by pushing him while trying to secure Kareem Carter. Defendants move for summary judgment on the Eighth Amendment claim on various grounds, first arguing that Green has failed to demonstrate their personal involvement in the alleged violation. The Court agrees, and will grant summary judgment to Defendants on the claim for excessive force.[9]

"[A] defendant's § 1983 liability must be predicated on [their] direct and personal involvement in the alleged violation." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 289 (3d Cir. 2018). This means a plaintiff must plead that each government official—through their own individual actions—violated the Constitution. *Iqbal*, 556 U.S. at 676. A government official who is in the immediate vicinity—but does not personally engage in the violative conduct—cannot be held liable under § 1983. *Jutrowski*, 904 F.3d at 290. At the summary judgment stage, a plaintiff must "produce evidence supporting each individual defendant's personal involvement in the alleged violation to bring that defendant to trial." *Id.* at 291. Alleging that some defendants exerted force—without identifying *which specific defendants*—will be fatal to a plaintiff's case. *Id.* at 292 (holding that plaintiff's claim could not survive summary judgment because he could not identify which of four defendants kicked him). The Third Circuit Court of Appeals has affirmed this "central tenet" in numerous excessive force cases, repeatedly finding that § 1983 claims cannot succeed where a plaintiff fails to identify the specific government officer or officers responsible

---

[9] Because the facts and the law clearly favor a finding of summary judgment for Defendants based on Green's failure to demonstrate personal involvement, the Court need not address Defendants' other arguments for summary judgment on this claim.

for the injury. *See*, *e.g.*, *Chapolini v. Capodanno*, No. 21-2954, 2023 WL 179843, at *1 (3d Cir. Jan. 13, 2023) (affirming summary judgment for defendants because plaintiff failed to produce evidence about which officer was personally involved); *Williams v. City of York, Pa.*, 967 F.3d 252, 261 (3d Cir. 2020) (finding summary judgment was warranted due to plaintiff's inability to establish the personal involvement of the defendant-officers); *Sharrar v. Felsing*, 128 F.3d 810, 821 (3d Cir. 1997) (affirming summary judgment for defendants where plaintiff "could not identify which, out of the 20 officers on the scene, was the perpetrator"); *Howell v. Cataldi*, 464 F.2d 272, 283 (3d Cir. 1972) (affirming a directed verdict for defendants because plaintiff could not identify which of the two defendants exerted excessive force).

Here, summary judgment is appropriate for Defendants because Green has not produced evidence to specifically identify which of the six Defendants pushed him. He has confirmed only that it was more than one Defendant but not all six. ECF No. 54-1 at 24-26, 51. Green is unable to identify the officers in question even after watching the video of the incident. *Id.* While Green testified that he "probably" had the officers' names written down, he has not produced anything to that effect. Nor is there any evidence that would allow a reasonable jury to deduce which Defendants pushed Green through process of elimination, as has been possible in other cases. *See, e.g.*, *Anglemeyer v. Ammons*, 92 F.4th 184, 190 (3d Cir. 2024); *Capra v. Knapp*, 788 F. App'x 864, 868 (3d Cir. 2019). Green provides no identifying descriptions of the officers who pushed him, nor any other evidence that would indicate to the Court or a jury who exactly was responsible for the alleged constitutional violation. As Defendants correctly note, Green seeks to proceed to trial against numerous Defendants who are free of liability "without confirming which of the six Commonwealth Defendants constitute the 'more than one' perpetrators who participated in the violation." ECF No. 53 at 12. To survive summary judgment on his excessive force claim, Green

must identify which specific Defendants pushed him. Merely stating that somewhere between two and five of the named Defendants did so is insufficient at this stage. Finding no factual dispute on this issue and because Defendants are entitled to judgment as a matter of law, the Court will grant summary judgment to Defendants on the excessive force claim.

Lastly, the Court addresses Green's claim alleging deliberate indifference to his safety in violation of the Eighth Amendment. Defendants argue Green's claim for deliberate indifference fails because it duplicates his claim for excessive force, which is not analyzed under the standard of deliberate indifference. This argument misconstrues Green's claim, which the Court understands to be related to, but separate from, his claim for excessive force. In his Complaint, Green states Defendants "forced [him] into an unsafe hostile environment," "disregarded [his] safety," and "put [him] in harms way." ECF No. 2 at 6. The Court interprets Green to allege that Defendants were deliberately indifferent to his safety by failing to take proper precautions *before* force was used. *See Vogt*, 8 F.4th at 182 (courts are to construe pro se allegations liberally).[10] Regardless, the record does not indicate that Defendants were deliberately indifferent to a substantial risk of harm. Accordingly, the Court will grant summary judgment for Defendants.

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal citation omitted). To bring an Eighth Amendment claim based on the failure to ensure reasonable safety, a plaintiff must show defendants were (1) deliberately indifferent to a (2) substantial risk of serious harm. *Betts*, 621 F.3d at 256. Deliberate indifference is assessed subjectively, whereas risk of serious harm is evaluated objectively. *Id.* To establish deliberate indifference, a plaintiff must demonstrate

---

[10] The claim could also be construed as an Eighth Amendment failure to protect claim, for which the analysis would be very similar and the result would be the same.

that defendants were "aware of facts from which the inference could be drawn that a substantial risk of harm exists and that they also drew the inference." *Id.* at 259 (internal citation and quotation marks omitted). At summary judgment, a plaintiff must present evidence to show defendants were "knowingly and unreasonably disregarding an objectively intolerable risk of harm." *Id.* Additionally, a plaintiff must demonstrate a substantial risk of serious harm existed, which courts analyze by looking to (1) the seriousness of the injury, (2) the likelihood that serious injury will result from the conduct, and (3) whether the risks associated with the conduct violate contemporary standards of decency. *Id.* at 257.

Based on the record, the Court finds that Green has failed to establish a genuine dispute as to whether Defendants were deliberately indifferent to a substantial risk of serious harm. Green testified that upon arrival to his cell, Carter was "hostile," uncuffed, and did not want a cellmate, but provides no evidence to show that Carter posed an actual threat to his safety, much less that Defendants knew Carter posed such a threat.[11] For example, Green does not cite to any parts of the record showing that Carter threatened anyone with physical violence on that day or was known to be violent.[12] Nor does Green provide more information about Carter's alleged "hostility," and whether it created an objectively intolerable risk of harm. The Court imagines that many incarcerated individuals would rather not have a cellmate and make this preference known in all sorts of ways. Simply refusing to have a cellmate and acting with some hostility during their arrival does not create the level of risk required to prevail on an Eighth Amendment deliberate indifference claim. While the Court understands that the failure to handcuff Carter may have led

---

[11]   The Court recognizes that Defendants dispute some of these facts.

[12]   Green testified that following the incident, he learned that Carter had previously been written up for refusing to take a cellmate, getting 30 days for the violation. ECF No. 54-1 at 15. Even if Defendants were aware that Carter had previously refused a cellmate, that information does not indicate that Carter posed a substantial risk of serious harm to a prospective cellmate.

13

Green to feel uneasy, the Court is not convinced that that failure created a substantial risk. In his deposition, Green even testified that he was not sure that handcuffing Carter would have changed anything. *Id.* at 17-18. Based on the record, a reasonable jury could not find for Green on his deliberate indifference claim. Without questioning or minimizing the impact of this incident on Green, the Court holds only that the information in the record and the applicable law do not entitle him to summary judgment.

**CONCLUSION**

The Court will grant summary judgment in favor of the moving Defendants on all claims. Green has failed to demonstrate any genuine dispute of material fact and Defendants are entitled to judgment as a matter of law on all claims. For the same reasons, the Court will also deny Green's motion for summary judgment.

An appropriate order follows.

                              BY THE COURT:

                              /s/ Juan R. Sánchez
                              Juan R. Sánchez, J.